UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>vs.<br><br>Jovan Marquis Harris,<br><br>        Defendant. | Case No.: 3:16-CR-00272<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Defendant, Jovan Marquis Harris ("Mr. Harris"), has been found guilty of one count of Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance Resulting in Serious Bodily Injury and Death (Count 1), one count Distribution of a Controlled Substance Resulting in Death (Count 2), two counts Distribution of a Controlled Substance Resulting in Serious Bodily Injury (Counts 3 & 5); and two counts Distribution of a Controlled Substance (Counts 6 & 7).  Mr. Harris has received the presentence investigation report ("PSIR").  His Sentencing Hearing is not currently scheduled.  This Sentencing Memorandum is filed for the court's consideration of the several issues, outlined below, that warrant a sentence in this case of **20 years** concurrent on all counts.

**<u>MINIMUM MANDATORY/GUIDELINE CALCULATION/CRIMINAL HISTORY</u>**

In this case, the minimum term of imprisonment is twenty (20) years on Counts 1, 2, 3, and 5.  The PSIR calculates Mr. Harris's guideline sentence to be 292-365 months, using an offense level of 38 and a criminal history category of III.  Mr. Harris does not object to the PSIR's guideline calculation, or the criminal history category calculation.  It has been advised the Government will seek an aggravating role upward adjustment, that Mr. Harris

opposes. Mr. Harris seeks a variance from the guideline sentence in accordance with the factors outlined in 18 U.S.C. § 3553(a).

## LAW AND ARGUMENT

This Court must fashion an appropriate sentence with consideration of the advisory sentencing guidelines. See United States v. Booker, 543 U.S. 220 (2005). Consistent with Booker, the Sentencing Reform Act requires a sentencing court to consider the guideline ranges, in conjunction with the enumerated factors of 18 U.S.C. § 3553. Id. at 245-246. The ultimate goal is a sentence that is not greater than necessary to satisfy the statutory purposes of sentencing, with due consideration to the characteristics of the offender and circumstances of the offense. See United States v. Booker, 543 U.S. 220 (2005); Rita v. United States, 551 U.S. 338 (2007); Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007). The United States Court of Appeals for the Eighth Circuit provides:

> [T]he sentencing court must first determine the appropriate guidelines sentencing range, since that range does remain an important factor to be considered in the imposition of a sentence. We, like the Second Circuit, realize that there may be situations where sentencing factors may be so complex, or other § 3553(a) factors may so predominate, that the determination of a precise sentencing range may not be necessary or practical. However, in those cases the court should be careful to identify potential applicable ranges, the reason why a specific range is not being selected, and other § 3553(a) factors that predominate. Once the applicable range is determined, the court should then decide if a traditional departure is appropriate under Part K and/or § 4A1.3 of the Federal Sentencing Guidelines. Those considerations will result in a "guidelines sentence." Once the guidelines sentence is determined, the court shall then consider all other factors set forth in § 3553(a) to determine whether to impose the sentence under the guidelines or a non-guidelines sentence.

United States v. Haack, 403 F. 3d 997, 1002-03 (8th Cir. 2005). In support of his argument

2

"[A] post-Booker sentence normally should be determined in a sequential manner, with the district court first determining the applicable guideline range, then deciding whether any traditional guideline departures are warranted, and finally considering the possibility of varying from the guideline sentence based on the factors in § 3553(a)." United States v. Coyle, 506 F.3d 680, 683 (8th Cir. 2007) (citation omitted). The statute provides that a Court shall impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing. Based upon the 3553(a) factors, listed and analyzed below, the Court can—and should—impose a reduced sentence for Mr. Harris.

## I. THE EVIDENCE DOES NOT SHOW MR. HARRIS TO BE AN ORGANIZER, LEADER, MANAGER, OR SUPERVISOR

It is well established the Government bears the burden of proving by a preponderance of the evidence the applicability of any aggravating role enhancement. United States v. Garcia-Hernandez, 530 F.3d 657, 665 (8th Cir. 2008); United States v. Mesner, 377 F.3d 849, 851-52 (8th Cir. 2004). In accordance with Section 3B1.1 of the sentencing guidelines:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

U.S.S.G. § 3B1.1 (emphasis in original). The commentary and application notes to Section 3B1.1 further provide that:

3

1. A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant.

2. To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

3. In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

4. In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

The evidence brought forth at the jury trial, despite the government's claim, does not show Mr. Harris to be an organizer, leader, manager, or supervisor. This analysis can be divided into three parts, with each part lacking any showing required to support the government's claim.

First, the controlled buys fail to establish Mr. Harris as a leader, organizer or supervisor involved in drug sales. The confidential informant utilized by the government is characterized by the supervising agent at state hearings as being unreliable. It was conceded during trial that his motivation to take actions requested by law enforcement, including his

4

testify was to keep from being sent to prison. His testimony conceded facts which take issue with Mr. Harris being the "leader" in any drug sales. The CI made no contact with Mr. Harris prior to the two sales. He entered the residence and made contact, not with Mr. Harris, but with his friend, Tyler MacInstosh. The CI communicated only with Mr. MacIntosh, and spoke of drugs only with Mr. MacInstosh. The CI received buy funds from law enforcement agents, who told him to give them to Mr. Harris. But despite this direction, the CI admitted that he never gave funds to Mr. Harris, instead either provided them to Mr. MacIntosh, or simply laid funds on a coffee table. The CI then admits that he never obtained drugs from Mr. Harris, but found them in the bathroom of the residence, laid out on a counter. The CI provided all of this sworn testimony as to what occurred, while at the same time, he admitted to lying to law enforcement agents by telling them he received the drugs directly from Mr. Harris, and gave the buy funds directly to Mr. Harris. These actions fail to show Mr. Harris involvement in the drug sale at all, much less eliminating him as the leader, organizer, supervisor etc.

The second area that must be examined to determine Mr. Harris' leadership role, surrounds the death of Jordan Larry. Testimony of Alexis Centers, who is the only person who testified that she had personal knowledge of Jordan Larry's supplier, stated that she met with the supplier on at least two occasions. She described his appearance, his vehicle, and his demeanor. Ms. Centers failed to pick Mr. Harris out of a lineup as that supplier. Ms. Centers also failed to identify Mr. Harris in open court as a person that she observed selling drugs to Jordan Larry.

Mr. Jacob Wetch testified that he had seen Mr. Harris in the company of Jordan Larry, and even recounted an incident where Jordan Larry argued with Mr. Harris over the

cost of drugs. This was in direct contradiction to previous statements Mr. Wetch had given to law enforcement personnel in which he claimed to have never seen Mr. Harris with Jordan Larry at any time. Mr. Wetch also denied selling heroin to Jordan Larry, when his previous statements to law enforcement had admitted this fact. His in trial demand for an attorney stands for his lack of credibility and his criminal culpability with Jordan Larry.

Mr. Derek Peterson's testimony was also offered to try and show Mr. Harris' leadership role. His testimony contradicted most of the state's witnesses, and lost complete credibility when he admitted that he had to ask "street witnesses" who Mr. Harris was and to hear the story so he knew how to testify.

Finally, you have the testimony of James Smith, who again was called upon by the government to show Mr. Harris orchestrated drug sales that led to Jordan Larry's death. Mr. Smith initially gave a statement to law enforcement personnel stating he had no idea who Mr. Harris was. He identified his seller as a person known to him as "Pete" and thought he came from the Minneapolis area. He stated he never spoke with the supplier, but instead worked through two unidentified females, one Asian and one native American, who would call him and deliver drugs to him from Minneapolis. Only after law enforcement personnel threatened Mr. Smith with federal indictment which could involve 20 years in prison, did Mr. Smith change his position and say he may have met Mr. Harris at a grocery store when he bought marijuana from him. He did not testify that he had ever received drugs from Mr. Harris, or to have provided him money for the purchase of those drugs. Mr. Smith's testimony, the same as the other witnesses called by the State, fail to show Mr. Harris having any leadership role in the sale of drugs.

The final area relating to this issue would be the condition in which law enforcement found Mr. Harris when they came in contact with him. Testimony of law enforcement personnel has his initial arrest on the day of the 2nd buy. At that time, Mr. Harris was taken into immediate custody without any prior knowledge that law enforcement were coming. No drugs were found on his person. No buy funds were found on his person. No packaging or paraphernalia was found on his person, although paraphernalia was located in the possession and control of Tyler MacIntosh. While the government argues that Mr. Harris was a "dealer" in a leadership role for drug sales, they found no documentation showing the sale of drugs, the fronting of drugs, the amount of transactions. In effect, law enforcement failed to find any real evidence to show that any sale had taken place. The government's case relied upon witnesses whose testimony was coerced by threats of indictment and prison, or whose testimony was incredible due to changes in story, or motivated by personal hatred for Mr. Harris.

II. **THE FACTORS DELINEATED IN 18 U.S.C. § 3553(a) REQUIRE CONSIDERATION AND SUPPORT IMPOSITION OF THE MINIMUM MANDATORY SENTENCE OF TWENTY (20) YEARS**

A. **The nature and circumstances of the offense and the history and characteristics of the defendant support a downward departure.**

Section 3553(a)(1) is a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" Gall, 552 U.S. at 597 n.6. Accordingly, the particular individual characteristics of an offender are considerable, even if those characteristics are "not ordinarily considered" by the guidelines. In this case, the Court ought to consider not only the history and characteristics of Mr. Harris, but also the circumstances of the offense.

Mr. Harris is a 28-year-old male. Mr. Harris's early life was highly unstable. Mr. Harris's father was not in the picture, and his mother was unable to control her own substance abuse issues. Mr. Harris initially entered foster care, staying with a number of relatives, eventually moving out on his own and becoming homeless at a young age.

Repeating history, Mr. Harris began using controlled substances at an early age. Mr. Harris's addictions became worse when shot in the leg as a teenager, and he became exposed to prescription pain killers. Addiction and substance abuse would remain near-constant companions to Mr. Harris though his life.

Coupled with issues of his substance use, Mr. Harris acknowledges his accumulation of criminal history. While Mr. Harris cannot change his history, Mr. Harris avers his criminal history primarily derives from issues surrounding his use, and impulse control issues.

### B. The need for the sentence imposed.

According to 18 U.S.C. § 3553(a)(2), the Court shall consider the nature of the sentence imposed:

> (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (2) to afford adequate deterrence to criminal conduct;
>
> (3) to protect the public from further crimes of the defendant; and
>
> (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Id.

Mr. Harris realizes that this offense is a serious offense, and the requested sentence is a reflection of all factors related to Mr. Harris, and is still a significant price to pay. Mr.

Harris is in need of continued drug treatment, education, and job skills. It is those items that will prevent him from committing further crimes.

C.  **The kinds of sentences available.**

Consistent with 18 U.S.C. § 3.553(a)(3), the Court must consider the types of sentences available. Mr. Harris acknowledges the minimum mandatory sentence.

D.  **Any pertinent policy statement.**

According to 18 U.S.C. § 35553, the Court is to consider any policy statement established by operative statutes or guidelines. Mr. Harris acknowledges the calculated guideline sentence. Nevertheless, as outlined herein, Mr. Harris requests the minimum mandatory sentence.

E.  **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The PSIR does not identify any codefendants.

F.  **The need to provide restitution to any victims of the offense.**

As of the time of filing, restitution has not been requested.

## CONCLUSION

For the foregoing reasons, Mr. Harris respectfully requests the Court sentence him to concurrent 240 month sentences, the minimum mandatory sentence, a sentence reduced from the guideline range.

Dated this 28th day of September, 2018.

VOGEL LAW FIRM

BY: Kenneth J. Kohler (#06338)
215 30th Street North
PO Box 1077
Moorhead, MN  56561-1077
Telephone:  218.236.6462
Email:    kkohler@vogellaw.com
ATTORNEYS FOR DEFENDANT